**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| 3W POWER USA, INC. f/k/a | § | |
| AEG POWER SOLUTIONS USA, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:15-CV-677 |
| | § | |
| POWER MAX CO., LTD., | § | |
| | § | |
| Defendant. | § | |

## CORRECTED MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The following are pending before the court:

1. Plaintiff's motion for summary judgment and brief in support (docket entry #16);

2. Power Max's opposition to motion for summary judgment (docket entry #21); and

3. Plaintiff's reply in support of motion for summary judgment (docket entry #23).

_____

1. Power Max's motion for partial summary judgment (docket entry #17);

2. Notice of errata to Power Max's motion for partial summary judgment (docket entry #18);

3. Plaintiff's corrected response to Defendant's motion for partial summary judgment and brief in support (docket entry #22);

4. Power Max's reply in support of motion for partial summary judgment (docket entry #24); and

5. Plaintiff's sur-reply to Defendant's motion for partial summary judgment and brief in support (docket entry #25).

Having considered the pending motions and the responsive briefing thereto, the court finds that the Plaintiff's motion for summary judgment should be granted in part and the Defendant's motion for partial summary judgment should be denied.

## FACTUAL BACKGROUND and PROCEDURAL HISTORY

The stipulated facts, as set forth in the parties' Joint Final Pretrial Order (docket entry #31) beginning at page 17, are as follows:

1. Simon Britter ("Britter") is an employee of AEG Power Solutions Sdn Bhd, a subsidiary of the Singapore division of AEG Power Solutions BV;

2. Sean Huang ("Huang") was the Chief Commercial Officer for ZNShine and, subsequently, for Power Max[1];

3. Power Max Co., Ltd. ("Power Max") is in the business of, among things, developing and selling to investors solar electric power plants in Japan;

4. Power Max is an affiliate of ZNShine Solar aka ZNShine PV-Tech Co. Ltd. ("ZNShine"), a Chinese manufacturer of photovoltaic panels, which convert sunlight into electricity;

5. During 2012, Britter began interfacing with representatives of ZNShine in Japan regarding the possibility that AEG might provide inverters for ZNShine's solar projects in Japan;

6. In early 2013, AEG proposed the use of the 45 kW MPV inverter systems for projects generating up to 50 kW of electricity;

7. Britter made several trips to Fukuoka, Japan during 2013 and 2014 to meet with representatives from ZN Shine and Power Max;

8. The 45 kW MPV inverter referenced above is a modular unit consisting of a 75 kW inverter cabinet and three 15 kW modules;

9. The cabinet is referred to as a 75 kW cabinet because it is capable of housing up to five (5) 15 kW modules [for] a total capacity of 75 kW;

---

[1]Although this fact was not included in the parties' stipulated facts, it appears to be undisputed.

10. The inverter units being discussed only included three (3) 15 kW modules for a total capacity of 45 kW. These modular units, consisting of a 75 kW Cabinet and three (3) 15 kW modules, will be referred to hereinafter as the 45 kW MPV Inverters;

11. Britter traveled to Fukuoka, Japan between June 3 and June 14, 2013, to meet with representatives from ZNShine;

12. On June 27, 2013, Britter sent Huang an email attaching the specifications for a transformer that he represented could be used with the 45 kW MPV Inverters along with a quote from one potential supplier;

13. On July 13, 2013, Huang, as "Director" of Power Max, issued a purchase order (the "Purchase Order") to "AEG Power Solutions";

14. The first page of the Purchase Order specifies a quantity of 500 "sets" of one (1) 75 kW MPV cabinet and three (3) 15 kW MPV inverters, at a price per set of $12,000, for a total price of $6,000,000;

15. The second page of the Purchase Order identifies a delivery schedule that adds up to only 200 Inverters;

16. On July 29, 2013, Britter sent Power Max's CEO an email requesting him to make the initial 20% payment on the first 80 45 kW MPV Inverters;

17. The unit price for each 45 kW MPV Inverter was $12,000;

18. The total cost for the first 80 units was, therefore, $960,000, 20% of which is $192,000;

19. Britter also requested that Power Max make arrangements for the letter of credit for the 80% balance of $768,000;

20. Power Max did not make the initial 20% deposit on the first eighty (80) units;

21. Sixteen (16) units at $12,000 per unit totals $192,000, 20% of which is $38,400;

22. On or about October 28, 2013, Power Max paid AEG Power Solutions USA, Inc. ("AEG USA") $38,400;

23. AEG USA shipped sixteen (16) 45 kW MPV Inverters to Power Max in November, 2013 which arrived in Japan in December, 2013;

24. Power Max made a 60% payment to AEG USA, in the amount of $115,200, in

connection with the shipment;

25. On January 14 and February 17, 2014, Michael Julian, general counsel for AEG Power Solutions BV, sent Huang "Notice Letters" on behalf of AEG USA demanding that Power Max complete the purchase of the remaining 484 45kW MPV Inverters;

26. On March 26, 2014, Britter sent Huang an email reminding him that the 20% balance on the delivery of the first sixteen (16) 45 kW MPV Inverters was due;

27. The 45 kW MPV Inverters were manufactured for AEG USA by Creation Technologies, Inc.;

28. Sixteen (16) 45 kW MPV Inverters were delivered to Power Max in Japan, together with 6 spare 15 kW modules for which Power Max was not charged;

29. The total purchase price for these sixteen (16) units was $192,000, of which Power Max paid $153,600;

30. AEG USA contracted to sell the 45 kW MPV Inverters to Power Max at a loss of approximately $1,450 per unit; and

31. Had AEG USA delivered five hundred (500) 45 kW MPV Inverters to Power Max and had Power Max paid $6,000,000 for all 500 inverters, AEG USA would have lost approximately $725,000.

On June 16, 2015, the Plaintiff filed its original petition in the 296th Judicial District Court of Collin County, Texas. In its petition, the Plaintiff alleged that the July 13, 2013 purchase order constituted an enforceable contract between the parties and the Defendant breached the contract. The Plaintiff sued for damages for the alleged breach of contract. The Plaintiff also seeks to recover its reasonable and necessary attorneys' fees. On September 29, 2015, the Defendant filed its original answer in state court, asserting the following affirmative defenses: statute of frauds; the contract was illusory, invalid, or unenforceable; the Plaintiff failed to satisfy all conditions precedent; waiver; ratification; estoppel; the economic loss rule; unclean hands; *in pari delicto*; statute of limitations; and comparative responsibility. Also on September 29, 2015, the Defendant filed counterclaims in

state court, alleging breach of the implied warranty of fitness for a particular purpose and breach of contract, seeking damages as well as its reasonable and necessary attorneys' fees. Thereafter, the Defendant removed this case to this court on October 2, 2015. On October 19, 2015, the Plaintiff filed its answer to the Defendant's counterclaims, asserting that the Defendant's claims are barred by the following affirmative defenses: prior breach; statute of frauds; the damage limitation contained in the agreement between the parties; statute of limitations; and the doctrines of waiver and/or estoppel.

On August 24, 2016, the Plaintiff moved for summary judgment, arguing that it is entitled to judgment as a matter of law on its own breach of contract claim as well as on both of the Defendant's counterclaims. Also on August 24, 2016, the Defendant moved for partial summary judgment, arguing that it is entitled to judgment as a matter of law on the issue of damages with respect to the remaining 484 45kW MPV Inverters. The court will address each motion in turn.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

Both parties have a responsibility in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof. The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 248. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Roach v. Allstate Indemnity Co.*, 2012 WL 1478745 (5th Cir. 2012), citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

## DISCUSSION AND ANALYSIS

### I.    BREACH OF CONTRACT CLAIMS BY THE PLAINTIFF AND THE DEFENDANT

Both the Plaintiff and the Defendant have asserted a cause of action for breach of contract. The Plaintiff has moved for summary judgment on its own breach of contract claim as well as the Defendant's breach of contract counterclaim. In its motion for summary judgment, the Plaintiff contends, and the Defendant does not contest, that this case is governed by Article II of the Uniform Commercial Code, TEX. BUS. & COMM. CODE TITLE I, CHAPTER 2 ("UCC").

Pertinent to both parties' breach of contract claims is whether the July 13, 2013 purchase order resulted in an enforceable contract. In response to the Plaintiff's motion for summary judgment, the Defendant argues that the purchase order did not result in an enforceable contract

because (1) the purchase order was not accepted in the manner specified in the purchase order[2], and (2) the inverters were not delivered in accordance with the schedule set forth in the purchase order.

As noted by the Plaintiff, however, § 2.209(a) of the UCC permits the modification of an agreement for the sale of goods. Further, § 2.204(a) provides that "[a] contract for [the] sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." TEX. BUS. & COM. CODE ANN. § 2.204(a). Additionally, "[e]ven though one or more terms are left open[,] a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." TEX. BUS. & COM. CODE ANN. § 2.204(c).

While the Defendant has cited the court to considerable case law indicating that the contract is not enforceable because the Plaintiff failed to accept the purchase order pursuant to its terms, the case law does not pertain to the UCC. "Where the U.C.C. applies, it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedure set forth in the U.C.C." *Glenn Thurman, Inc. v. Moore Const., Inc.*, 942 S.W.2d 768, 771 (Tex. App. – Tyler 1997, no writ). Even though the Defendant failed to provide the court with applicable case law and failed to respond to the Plaintiff's argument that the Defendant's case law is indeed inapposite, the court finds that there is a fact issue as to whether the purchase order resulted in an enforceable contract under the UCC. *See supra.* (the court finds that a genuine dispute as to a material fact exists regarding whether the Plaintiff failed to provide the on-site technical support required under the

---

[2]The purchase order provided that "[i]t is valid only with the advanced payment mentioned above and must be formally acknowledged by AEGPS within 1 week of receipt of the advanced payment and this purchase order. The Purchase order in total becomes valid only after design confirmation by AEG PS, hence signed layout as per Addendum 1."

purchase order and whether the Plaintiff failed to ensure the technical functionality of the inverters).

The Defendant urges the court to deny the Plaintiff's motion for summary judgment with respect to (presumably) both parties' respective breach of contract claims on the affirmative defenses of ambiguity and abandonment.[3] The Defendant argues that the contract was ambiguous because the quantity of inverters noted on the front page of the purchase order was 500. However, the second page of the purchase order only enumerates 200 inverters. As such, the Defendant contends that this ambiguity prevents the court from granting the Plaintiff's motion for summary judgment.

In response, the Plaintiff first contends that ambiguity is an affirmative defense that must be pled; however, the Defendant failed to plead the same.

> FED. R. CIV. P. 8(c) requires that a party specifically plead an affirmative defense. Rule 8(c) contains a nonexclusive list of affirmative defenses that does not include ambiguity. Under Texas law, however, ambiguity is an affirmative defense that must be pleaded. *See Old Republic Sur. Co. v. Palmer*, 5 S.W.3d 357, 360 (Tex. App. 1999, no pet.). Even in a diversity case, however, interpretation of a contract is a matter of law, and the court can conclude that a contract is ambiguous even when no party pleads ambiguity.

*Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, LTD.*, 729 F. Supp. 2d 814, 847 (N.D. Tex. 2010) (citations omitted). Here, however, the court finds that the contract is not ambiguous. Although the Defendant, in its response to the Plaintiff's motion for summary judgment, makes much of the numerical inconsistencies regarding the number of units ordered, the Defendant took a different position in its own motion for partial summary judgment. In the section of the Defendant's motion for partial summary judgment entitled "Statement of Undisputed Facts," the Defendant states, "On July 13, 2013, Power Max issued the Purchase Order to AEG to purchase 500

---

[3]This corrected Memorandum Opinion and Order is being issued by the court because the court has deleted the following wording from the original version of this Memorandum Opinion and Order: "Having found that a contract was formed under the UCC, the court notes that".

Inverters at a cost of $12,000 per Inverter." POWER MAX'S MTN. FOR PARTIAL SUMM. JUDG., p. 2, § III. Since the court does not consider motions in a vacuum, the court finds that ambiguity is a non-issue since the parties agree that the contract was for 500 inverters.

Next, the court considers the affirmative defense of abandonment. The Defendant argues that the parties abandoned the terms of the contract because the parties discussed a delivery schedule for the inverters that differed from that stated in the purchase order. The Plaintiff contends that because the Defendant failed to plead the affirmative defense of abandonment, the Defendant waived its argument. Unlike the affirmative defense of ambiguity, which requires the court to interpret a contract as a matter of law, the affirmative defense of abandonment does not require any such interpretation. "Abandonment is an affirmative defense which must be pled . . ., and failure to plead it results in its waiver." *Cargal v. Cargal*, 750 S.W.2d 382, 384 (Tex. App. – Fort Worth 1988, no writ). Since the Defendant did not plead the affirmative defense of abandonment, the Defendant waived the same.

Next, the Defendant argues that the Plaintiff failed to perform its obligations under the purchase order. In its breach of contract counterclaim, the Defendant alleges the following:

> 19.     AEG promised "to provide Power Max Co Ltd with on-site technical support within Japan during the installation and commissioning for the first 50 systems at no extra cost. This is to help Power Max Co Ltd become familiar with the systems and to ensure AEGPS systems are installed and working correctly."

> 20.     AEG breached its contract with Power Max because the systems could not be made to work on the Japanese power grid.

> 21.     Power Max has been injured by AEG's breach of contract in the amount of $153,600 because that is the amount that it paid AEG for the systems that did not work.

The Defendant argues that the Plaintiff failed to provide the support required under the purchase

order and further failed to ensure the technical functionality of the inverters. In response, the Plaintiff contends that Britter was prepared to provide on-site technical support to the Defendant once he was advised by the Defendant that the Defendant was ready to proceed with installation. However, the Plaintiff argues that the Defendant failed to provide the Plaintiff with an installation schedule. The Plaintiff further responds that the inverters were designed and manufactured to be fully capable of use in connection with the power grid in Japan, if installed properly and with a proper transformer.

The court finds that as a matter of law, a genuine issue of material fact exists regarding whether the Plaintiff failed to provide the support required under the purchase order and whether the Plaintiff failed to ensure the technical functionality of the inverters. The Plaintiff contends that in order for the Defendant to establish that the inverters or the related transformers were not functional, the Defendant would be required to offer competent expert testimony. Since the Defendant failed to designate any expert witnesses, the Plaintiff argues that the Defendant will not be able to meet its burden. While this might be ultimately true, that is a matter of proof to be determined at trial.

Finally, the Plaintiff argues that it is entitled to judgment on its breach of contract claim. In its breach of contract claim, the Plaintiff alleges the following:

> 13. . . . Power Max issued the PO to AEG, which AEG accepted. The accepted PO constitutes an enforceable contract between Power Max and AEG for the delivery of 500 inverters. Of the 500 Inverters ordered by Power Max, it purchased only 16. Furthermore, not only did Power Max fail to purchase the additional 484 Inverters it ordered, it failed even to pay the full purchase price for the 16 Inverters which were delivered.

> 14. As a result of the foregoing, Power Max is in breach of the agreement between the parties. As a result of such breach, AEG has been damaged in the amount of Five Million Eight Hundred Forty-Six Thousand Four Hundred and 00/100 Dollars ($5,846,400).

The Plaintiff contends that since the Defendant breached the terms of the contract, it is entitled to recover its damages. However, since a genuine dispute as to a material fact exists regarding whether the Plaintiff failed to provide the support required under the purchase order and whether the Plaintiff failed to ensure the technical functionality of the inverters, the court need not reach the issue of damages.[4]

## II.    BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

Although the Plaintiff moved for summary judgment on the Defendant's counterclaim for breach of the implied warranty of fitness for a particular purpose, the Defendant did not file a response.   Given the Defendant's failure to brief this issue, the court finds that the Defendant has abandoned this counterclaim.  *See Denson v. BeavEx, Inc.*, 612 F. App'x 754, 759 (5th Cir. 2015). Accordingly, the Plaintiff's motion for summary judgment on the Defendant's counterclaim for breach of the implied warranty of fitness for a particular purpose is **GRANTED**.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that the Plaintiff's motion for summary judgment (docket entry #16) is **GRANTED IN PART** and Power Max's motion for partial summary judgment (docket entry #17) is **DENIED**.

---

[4]The Defendant's motion for partial summary judgment concerns whether the Plaintiff is entitled to recover damages for the 484 Inverters.  Since the issue presented concerns damages, the court need not reach this issue.  However, to the extent the Defendant complains that it did not receive timely discovery related to purchase order 1341 between Creation Technologies and the Plaintiff for the component parts necessary to fill the July 13, 2013 purchase order between the Plaintiff and the Defendant, the court finds the Defendant's arguments unpersuasive.  The court is not inclined to consider objections to discovery matters that are buried in a motion for summary judgment.  Further, the court presumes the Defendant was aware of the Plaintiff's pretrial disclosures filed on August 19, 2016 (docket entry #15) which noted that the Plaintiff expects to offer "[i]nvoices from Creation Technologies, Inc. to Plaintiff Dated September 23, 2013 through October 8, 2014" and "Summary of Creation Technology, Inc. Invoices." The Defendant did not move to strike these exhibits.  While the court does not condone gamesmanship, the court does not have sufficient information to determine wrongdoing, if any.

IT IS SO ORDERED.

**SIGNED this the 7th day of November, 2016.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE